## THE DOYLESTOWN.

### RIDEOUT v. CHARLES NELSON CO.
#### No. 20323–K.

District Court, N. D. California, S. D.
March 3, 1931.

Resleure & Hill, of San Francisco, Cal., for libelant.

Irving H. Frank, and Nathan H. Frank & Irving H. Frank, all of San Francisco, Cal., for respondents.

KERRIGAN, District Judge.

In this case the steamer Doylestown about midnight on July 7, 1930, in attempting to

proceed alongside the Sperry wharf at Vallejo, collided with the tug Haleyon and the barge Rideout No. 5, which were moored to the dock. The collision drove the Haleyon onto the barge, causing considerable damage. The dock is about 700 feet long, with its face lying north and south. Barge No. 5 was moored toward the south end, and at the north end were moored another barge (Rideout No. 6) and tug, also belonging to libelant. Each of the barges was about 100 feet long, and each, with its tug, extended out from the dock about 50 feet. The Doylestown is about 300 feet long, over all.

It was a moonlight night, and both the tugs and barges carried proper lights. The wind was from the northwest, and the tide was setting in the same direction, i. e., toward the dock. In the afternoon of the same day, July 7th, before leaving San Francisco, the master of the Doylestown had arranged with the Sperry Flour Company to dock at the wharf in question about 12 o'clock midnight, and that the dock should be free of vessels at that time. Barge No. 6 was loaded early in the evening, and, notwithstanding that its master or operator was told twice thereafter by the wharf watchman that the Doylestown would arrive about 12 o'clock, and ordered to leave so that the dock would be clear at that time, the barge was not moved. It was waiting for an ebb tide to facilitate its crossing to San Francisco, but its crew went to sleep, and nothing was done to move it until after the tide commenced to ebb, and indeed until after the arrival of the Doylestown at the time announced. Barge No. 5 arrived at the dock at about 10 o'clock the same night, and its master was then told that the face of the dock must be kept clear in order that the Doylestown might safely dock at midnight. The tide was such that both of these barges could have tied up around the ends of the wharf and thus have left it clear.

The steamer approached the dock through a narrow channel shortly after 12 o'clock and gave a timely landing signal. Her officers seasonably saw barge No. 6, but, as they testified, on account of the condition of the shore lights, barge No. 5 appeared to be alongside the end of the dock instead of on the face of the dock, until the vessel was about 300 feet south and 125 feet west of where the barge was lying. The master of the Doylestown then realized that he would have to dock between the two barges, with both the tide and wind setting him toward the dock. Owing to the slow speed at which he felt required to move, and the prevailing weather conditions, the vessel could not be expected to, and in fact did not, respond to her helm. A line was passed to the dock and made fast, the engines were stopped, and the master attempted to let the steamer drift into a position between the barges. The maneuver was not a success, and barge No. 5 was squeezed and received the injuries for which libelant seeks to recover.

If the barges had been docked around the end of the wharf, or if barge No. 5 had been tied up alongside of barge No. 6, there would have been ample space for the maneuver and the accident would have been avoided. It was the presence of libelant's barges which caused all the trouble. These barges were so placed upon the face of the dock that they left a space of about 480 feet in which to dock a 300-foot steamer at midnight with an adverse wind and tide. The master was in an awkward position. He had to act quickly. He did well, I think, under all the circumstances. I further believe that respondents have overcome the presumption of negligence cast upon a moving vessel which collides with one at rest.

It is true that it is probable that if, when the master of the steamer first realized the situation facing him, he had dropped his port anchor and gone full speed astern, he might have avoided the collision, for then the tendency of the propeller would have been to hold the stern up against the wind and tide. But it is one thing now, with the facts all before us, to calmly suggest how the situation could have been met, and quite another to be on the bridge at night, facing a difficult problem requiring instant action. It is conceded that the space within which the steamer was compelled to dock was greatly reduced by the presence of the barges and tugs, and there is also evidence that the available space was sufficient to warrant attempting the maneuver, and I think that, under all the circumstances, there was reasonable expectation that it could be accomplished in safety.

I find the Doylestown free from fault. Let a decree be entered for respondents, accordingly, with costs.

In view of this opinion, I believe that no purpose will be served by requiring the preparation of further, formal findings of fact and conclusions of law. This opinion will stand as my findings in this case. Therefore let the decree be entered forthwith.